113 Pa. Commonwealth Ct. 31 (1988)
536 A.2d 476
Commonwealth of Pennsylvania, State Police, Appellant
v.
Jeffrey M. Howard and Jane Howard, his wife, Appellees.
No. 2562 C.D. 1986.
Commonwealth Court of Pennsylvania.
Argued October 6, 1987.
January 25, 1988.
Argued October 6, 1987, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.
*32 Robert T. McDermott, Deputy Attorney General, with him, Frank J. Micale, Deputy Attorney General, and LeRoy S. Zimmerman, Attorney General, for appellant.
Elaine Specter, with her, Howard A. Specter, Specter & Buchwach, P.C., and Bruce L. Smith, for appellees.
OPINION BY JUDGE CRAIG, January 25, 1988:
The Pennsylvania State Police appeal from an order of the Court of Common Pleas of Crawford County sustaining a molded verdict for Jeffrey M. Howard and dismissing the State Police's motions for post-trial relief. We affirm.
The basic facts are not in dispute. On August 31, 1984, Trooper Sanford R. Porter, driving a state police vehicle, collided with Jeffrey M. Howard, badly injuring him, when Trooper Porter's vehicle went through a stop sign at the intersection of Canadohta Lake road and State Route 8. Trooper Porter's car had been the vehicle in a three-car state police convoy, en route to an emergency assignment in Warren, Pennsylvania.
The state police officers, not in immediate hot pursuit, were driving at a high rate of speed despite visibility difficulties from early morning fog and sun. Trooper Porter was not using his siren along Canadohta Lake road as he approached the intersection with Route 8.
The jury returned a verdict in favor of Mr. Howard, awarding Mr. Howard damages in the amount of $266,700.00, which the trial judge later molded to reflect *33 a payment of work loss benefits, under Mr. Howard's policy, of $15,000.00 and the plaintiff's willingness to accept the $250,000.00 statutory limit imposed in 42 Pa. C. S. §8528(b). Pursuant to Pa. R.C.P. No. 238, the trial judge later added an additional $11,438.36 for delay damages, resulting in a molded verdict amount of $261,438.36.
The state police, in the post-trial motions, claimed entitlement to a compulsory nonsuit or directed verdict and listed nine errors as a basis for a new trial. On July 23, 1986, the trial court denied the post-trial motions and sustained the molded verdict.
When reviewing a denial of a motion for a new trial, our scope of review is limited to a determination of whether there has been an error of law controlling the outcome of the case, or an abuse of discretion where the ruling turns on the weight of the evidence. Commonwealth of Pennsylvania, Department of Transportation v. Consolidated Rail Corporation, 102 Pa. Commonwealth Ct. 611, 519 A.2d 1058 (1986).
The state police contend initially that the trial court's refusal to permit more detailed evidence as to the emergency situation, to which they were responding, severely prejudiced their case. We disagree. The testimony of Trooper David Lash reveals the following:
Q: And what was your understanding of your duties once you arrived at Warren?
A: Supposed to assist in searching for a couple of wanted fugitives up there.
Q: And what did you understand was the nature of the incident that you were dispatched 
Mr. Specter: Objection, your Honor.
The Court: Overruled. We'll allow a limited explanation.
A: The night before, there had been a kidnapping of a family 

*34 The Court: We don't need a lot of details, Officer. Just summarize.
A: It was a kidnapping and then a security guard chased him and he was shot by him. He ran a roadblock, shot a police the next morning, and then they were ambushing people at random up in the Warren area.
Based on that testimony of Trooper Lash and later references by the trial judge in his charge to the jury, the jury had sufficient information to appreciate the nature of the emergency situation confronting the state troopers and thus make an appropriate decision in light of that exigency. Therefore, the trial judge's ruling constituted a reasonable limitation of cumulative evidence, harmless to the state police case. Fink et ux. v. Commonwealth of Pennsylvania, 85 Pa. Commonwealth Ct. 290, 482 A.2d 281 (1984).
The state police are unable to cite authority for any proposition that, as the seriousness of an emergency increases, the standard of care they must exercise proportionately decreases.
Indeed, as the seriousness of an emergency escalates, a police officer is not entitled to become more careless. The fact that lives may be at risk does not authorize a well-intentioned police officer to place even more lives at risk.
Secondly, the contention that a new trial is required because the trial judge committed an error in charging the jury on the use of audible warnings by emergency personnel, and failing to allow testimony in that subject area, is without merit.
A jury instruction, to constitute reversible error, must be proved to be not only erroneous but also harmful to the complaining party. Mickey v. Ayers, 336 Pa. Superior Ct. 512, 485 A.2d 1199 (1984). Furthermore, review of the charge in its entirety is necessary to determine *35 whether error has occurred. Kearns v. Clark, 343 Pa. Superior Ct. 30, 493 A.2d 1358 (1985).
The relevant portions of the questioned charge are as follows:
. . . [T]he legislature provides that certain authorized emergency vehicles, namely in this case, State Police, should have the right to violate. . . rules when the situation or emergency demands. . . .
I'll read for you . . . the pertinent sections of this, eliminating a lot of the language that does not apply to our situation.
This says the driver of an emergency vehicle, when responding to an emergency, may exercise the privileges set forth in this section, but subject to the conditions set out in this section. Well, I don't think there is any doubt that there was an emergency call or an emergency mission here and the situation with the police officer fell within the purview of this section. . . . [A] police officer who is responding to an emergency has the right to certain privileges to ignore the Vehicle Code.
. . . [B]ut there are some strings attached to that provision. And Section B says, the driver of an emergency vehicle may proceed past a stop sign but only after slowing down as may be necessary for safe operation. The driver of an emergency vehicle may exceed speed limits so long as the driver does not endanger life or property.
. . . [T]he next section says the privileges granted in this section to an emergency vehicle shall apply only when the vehicle is making use of an audible signal and visual signals.
. . . . *36 So, in summary then, the legislature has seen appropriate to grant privileges to emergency situations in this instance the State Police, allowing them to ignore certain rules of the road but attaching conditions to the ignoring of those rules.
The state police's allegation that they were denied a fair trial because the trial judge merely read without elaboration the applicable section 3105 of the Vehicle Code, 75 Pa. C. S. §3105, is unsupported. We are satisfied that the explanations given to the jury well equipped them to make a conscientious and fair determination of the matter at hand. As the above quotation establishes, there is no dispute as to the point that the judge accurately conveyed the content of section 3105, governing emergency vehicle operation. Subsection (c) clearly allows disregard of a stop sign only when an "audible signal"  siren  is being used. Accordingly, viewing the charge in its entirety, we find no error.
Additionally, the state police contend that the trial judge's failure to allow further testimony regarding the use of audible warnings prejudiced their case. We disagree. The state police sought to introduce testimony that Trooper Porter's understanding of the policies of the state police and the vehicle code left the use of the siren to his discretion when engaged in the emergency mission. The trial judge, in response to an offer of proof, agreed to allow testimony as to what Trooper Porter actually did during the operation of his vehicle, as he approached the intersection, and agreed to allow the trooper to give his reason why he approached the intersection without his siren or horn blowing. However, the trial judge refused to allow testimony regarding any unwritten or written policy that the use of the siren was discretionary. Wide latitude is given to a trial court's decision to exclude or admit a particular witness' testimony. *37 Kosey v. City of Washington Police Pension Board and the City of Washington, 73 Pa. Commonwealth Ct. 564, 459 A.2d 432 (1983).
The state police further allege that the use of the siren falls within the provision of 42 Pa. C. S. §8524 governing common law defenses applicable in a sovereign immunity situation. At subsection (3), that section allows discretion to be a defense by statute or statutory authorized regulation. Our interpretation of the applicable section of the Vehicle Code does not reveal any action which could be construed as discretionary. Certainly, 42 Pa. C. S. §8524 does not grant state personnel discretion to ignore statutorily imposed regulations governing safety procedures during an emergency situation.
Finally, the state police argue that, because the recent decision in Craig v. Magee Memorial Rehabilitation Center, 512 Pa. 60, 515 A.2d 1350 (1986) suspends the mandatory provisions of Pa. R.C.P. No. 238 pertaining to the award of delay damages, Mr. Howard should not have been awarded delay damages.
Craig prospectively set forth a new procedure for the award of delay damages, by stating:
The suspension of the mandatory provisions of Rule 238 is to be given prospective effect only. Those parties whose cases are now in the appellate process, who have not asserted attacks on the Rule 238 aspect of the damage award, may not now assert such challenges. However, in those cases where the issue has been preserved, the court before whom the case resides on or after this date is to resolve the issue in a manner consistent with this opinion.
The plaintiff filed the complaint on January 11, 1985. Although the state police filed their appeal to this court on August 21, 1986, some weeks before the Supreme *38 Court decided Craig on October 8, 1986, the record shows that the state police did, in terms of Craig, attack "the Rule 238 aspect of the damage award. . ." in the post-trial motions. Therefore, the delay damage issue falls under the procedure which the Supreme Court specified in Craig. Accordingly, we remand for a hearing on the delay damage issue only.
With respect to the remaining nine issues, we affirm on the basis of the sound opinion of President Judge P. RICHARD THOMAS in the matter of Howard v. Commonwealth of Pennsylvania State Police, D. & C. 3d (1987) (23 Crawford County Civil Division 3d 1985, filed July 23, 1986).

ORDER
NOW, January 25, 1988, the order of the Court of Common Pleas of Crawford County, dated July 23, 1986 is affirmed, except as to delay damages, with respect to which the order is vacated, and this case is remanded to the trial court for a hearing on the delay damage issues.
Jurisdiction relinquished.